IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELO RODRIGUEZ, | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | NO.  11-00043 |
| v. | : | |
| | : | |
| NATIONAL RAILROAD PASSENGER | : | |
| CORPORATION, t/d/b/a AMTRAK, | : | |
| **Defendant.** | : | |

DuBOIS, J.                                                                                          June 20, 2012

**M E M O R A N D U M**

I.        INTRODUCTION

This is an employment discrimination case. Plaintiff Angelo Rodriguez alleges in the

Complaint that defendant National Railroad Passenger Corporation t/d/b/a Amtrak ("Amtrak"),

his present employer, discriminated against him in violation of Title VII of the Civil Rights Act

of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act

("PHRA"), 43 Pa. Cons. Stat. § 951 et seq. Plaintiff's claims arise from defendant's failure to

promote him to the position of District Manager Stations ("District Manager"), which he asserts

constituted discrimination on the basis of race, color, and national origin.

Presently before the Court is Defendant's Motion for Summary Judgment. For the

reasons that follow, the Court grants the motion.

## II.   BACKGROUND[1]

### A.   The Parties

Defendant is a government-owned corporation that provides passenger rail services throughout the United States and employs more than 20,000 employees. (Compl. ¶ 3; Def.'s Statement of Undisputed Facts ("Def. SOF") ¶ 2.) In Harrisburg, Pennsylvania, defendant operates a train station and a mechanical facility, where trains are stored, cleaned, and repaired. (Def. SOF ¶ 2.)

Plaintiff characterizes his ethnicity as "Hispanic." (Compl. ¶ 2.) He holds a high school diploma from Harrisburg High School. (Pl.'s District Manager Application, Def.'s Mot. Summ. J. ("Def. Mot.") Ex. A-2, at 1.)

### B.   Plaintiff's Employment History

Plaintiff was hired by Amtrak in 1979. (Def. SOF ¶ 3.) Throughout his thirty-year career at Amtrak, plaintiff has held positions as a trackman and a ticket clerk in Harrisburg and Lancaster, as a clerk in the reservations office in Philadelphia, as Lead Baggage Clerk in Harrisburg, and as a material handler at the now-defunct Dock Street cargo facility in Harrisburg. (Id. ¶¶ 2, 6; Dep. of Angelo Rodriguez ("Pl. Dep."), Def. Mot. Ex. A, at 19-21, 27-30.) Plaintiff's job responsibilities for each of these positions included, respectively, maintaining train tracks, making reservations for passengers over the telephone, overseeing maintenance of station equipment, completing payroll and providing job assignments for eight other baggage clerks, and loading and unloading boxcars with freight. (Def. SOF ¶¶ 5-6.)

---

[1] As required on a motion for summary judgment, the facts set forth in this Memorandum are presented in the light most favorable to plaintiff, the non-moving party.  The Court refers to the parties' statements of material facts where those facts are not controverted. Where they are controverted, the factual disputes are noted.

Presently, plaintiff works as a baggage clerk at the Harrisburg station. (Id. ¶ 4.) He has held this position for at least the past six years. (Id.) Plaintiff is the only baggage clerk at the Harrisburg station during his shift, and his responsibilities include assisting train passengers with their baggage, receiving passenger complaints, and coordinating alternative transportation for passengers when necessary. (Id.)

### C.      District Manager Job Posting

On May 4, 2009, Amtrak posted an internal vacancy for District Manager, a management-level position, in Harrisburg. (Id. ¶ 8; District Manager Job Posting, Def. Mot. Ex. C-1.) The vacancy was open only to present Amtrak employees. (Def. SOF ¶ 9.) The position became available because the District Manager at the time, Richard Esposito, was promoted to the position of Director Materials Management. (Id. ¶ 13; Dep. of Linda C. Davenport ("Davenport Dep."), Def. Mot. Ex. C, at 15.) As part of the transition process, Amtrak selected an acting District Manager, Bradley Webber, and a temporary Station Manager, Linda Garrity. (Def. SOF ¶ 13; Davenport Dep. 41.) Webber is a Caucasian male, and Garrity is a Caucasian female. (Compl. ¶¶ 22, 24.) According to plaintiff, Esposito did not immediately assume his new position as Director Materials Management, but rather remained as District Manager in order to assist Webber and Garrity in covering all managerial responsibilities until the vacancy could be permanently filled. (Pl.'s Opp'n Def.'s Mot. Summ. J. ("Pl. Opp'n") 7.)

At the time the vacancy was posted, the District Manager was responsible for the day-to-day operations of two staffed and seven unstaffed train stations between Harrisburg and Exton and the day-to-day operations of the Mechanical Departments in Harrisburg and Pittsburgh.[2] (Def. SOF ¶ 9.) The District Manager supervised about fifty-five employees. (Id.) Other duties

---

[2] Less than a year after the position was filled, responsibility for the day-to-day operations of the Mechanical Departments was removed from the District Manager. (Def. SOF ¶ 9 n.4; Pl. Opp'n 8; Davenport Dep. 39-41.)

included mentoring employees, ensuring regulatory compliance, working with state and local organizations, and performing other managerial and administrative functions, including scheduling, procurement, and labor relations. (Id. ¶ 10.)

Candidates applying for the District Manager position were required to have the following qualifications: (1) a high school diploma or GED, (2) demonstrated experience in a supervisory/leadership position, (3) station operation experience with demonstrated knowledge in ticketing, station operations, baggage, building maintenance, and service delivery, and (4) the ability to communicate effectively, both orally and in writing, with customers and internal and external organizations. (Id. ¶ 11; Dep. of Patricia Kerins ("Kerins Dep."), Def. Mot. Ex. B, at 23-25; District Manager Job Posting 1.) The job posting also stated that it was "highly desirable" for an applicant to have experience in labor union contracts, mechanical operations, and the Code of Federal Regulations ("CFR"). (District Manager Job Posting 1; Def. SOF ¶ 12; Kerins Dep. 23-34; Pl. Opp'n 3.)

A note on the bottom of the first page of the job posting stated, "It is the policy of the National Railroad Passenger Corporation to offer all employment opportunities without regard to race, color, religion, gender, age, national origin, disability, or veteran status." (District Manager Job Posting 1.) The application did not ask the applicant to disclose his or her race. (See Pl.'s District Manager Application.) The application instructed applicants to "[a]ttach additional sheets" if necessary, but no information beyond the application was required. (Id. at 1.)

### D.     The Application Process

Patricia Kerins, Human Resources manager, accepted applications for the District Manager position through May 11, 2009. (Def. SOF ¶ 14.) Kerins was in charge of reviewing applications and selecting qualified applicants for interviews. (Id.) Linda Davenport, the hiring

manager for the District Manager position, was responsible for making the final hiring decision. (Id. ¶ 21; Davenport Decl. ¶ 6.) In his Complaint and Opposition, plaintiff focuses exclusively on his qualifications as compared to Garrity and Webber. The Court will thus consider plaintiff's, Garrity's, and Webber's applications in turn.

### 1. Plaintiff's Application

Plaintiff submitted an application for the District Manager position on about May 8, 2009, and this application was the sole piece of information plaintiff provided to Kerins regarding his skills and qualifications. (Def. SOF ¶ 17; Pl. Dep. 96; Pl.'s District Manager Application.)

Plaintiff listed his past employment positions with Amtrak on his application, but did not list his present position first, as the application instructed. (Pl. Dep. 97; Pl.'s District Manager Application 2.) Plaintiff also listed a position that he referred to as "Temp. Station Supt." (Pl.'s District Manager Application 1.) Plaintiff avers that he held this position from 1984 to 1996 and that he was occasionally responsible for supervising all ticket agents, baggage clerks, and station cleaners in the Harrisburg and Lancaster stations. (Id.; Pl. Dep. 104.)

On his application, plaintiff also wrote a narrative of fewer than 200 words emphasizing his customer-service experience and his experience working closely with federal, state, and local governments. (Pl.'s District Manager Application 2.)

Plaintiff made several telephone calls to Kerins to confirm receipt of his application. (Def. SOF ¶ 19.) Kerins testified that after speaking with plaintiff, she reviewed his application and concluded that he was not qualified for the position based on the information provided in the application. (Id. ¶¶ 20, 23; Decl. of Patricia Kerins ("Kerins Decl."), Def. Mot. Ex. E, ¶ 6.) In commenting on the application, Kerins said she did not believe that the position of "Temp.

Station Supt." existed and found it strange that plaintiff claimed to have held a temporary

position for over twelve years. (Def. SOF ¶ 20; Kerins Dep. 62-63.) After reviewing plaintiff's

application, Kerins contacted Davenport to "confirm her belief" that plaintiff was not qualified

for the position. (Def. SOF ¶ 21; Kerins Dep. 63.) According to Kerins, Davenport "confirmed"

that plaintiff was not qualified for the position because he lacked budgeting, mechanical, and

management experience. (Def. SOF ¶ 21.)

Neither Kerins nor Davenport knew plaintiff, and plaintiff never communicated his race

or national origin to Kerins. (Id. ¶ 23; Pl. Dep. 96.)

### 2.  Linda Garrity's Application

On May 8, 2009, Linda Garrity, temporary Station Manager of the Harrisburg and

Lancaster stations at the time, emailed her application for the District Manager position to Kerins

and attached a resume. (Def. SOF ¶ 24; Garrity's District Manager Application, Def.'s Mot.

Summ. J. Ex. E-B.) On her application, Garrity included a description of more than 600 words

emphasizing her customer-service skills and her involvement with marketing, outreach, and

employee relations. (Garrity's District Manager Application 3-4.)

Plaintiff avers that, despite her temporary assignment as Station Manager, Garrity only

worked as a clerk and a secretary in her career at Amtrak. (Pl. Opp'n 9; see Garrity's District

Manager Application.) As support, plaintiff cites to Garrity's application, which does not

disclose supervisory or management experience. (Pl. Opp'n 9; see Garrity's District Manager

Application.)

Defendant asserts that Garrity also worked as a secretary to former District Manager

Esposito, where she gained knowledge of budgeting, payroll, and station operations. (Def. SOF

¶¶ 25-26.) Defendant further asserts that Garrity also became familiar with mechanical

operations in Harrisburg, although she was unable to perform hands-on mechanical duties. (Davenport Dep. 13-15; see also Garrity's District Manager Application.)

### 3. Bradley Webber's Application

Bradley Webber, acting District Manager at the time, submitted an application that included a performance review, a list of completed management trainings, and a skill report. (Def. SOF ¶ 30; Webber's District Manager Application, Def. Mot. Summ. J. Ex. E-A.) Webber listed his present job status as General Foreman and identified his supervisor as Mike Tsikalas, Assistant Superintendent for Passenger Services. (Webber's District Manager Application 1.)

On his application, Webber included a narrative of more than 700 words detailing how he had started off as an electrician with Amtrak in 1993 and had increased his knowledge and abilities as he was promoted to other positions entailing more management and supervisory duties. (Id. at 2-3.)

As General Foreman, Webber was responsible for all mechanical operations in Harrisburg and Pittsburgh, which entailed managing approximately thirty-four mechanical employees and overseeing a joint budget of over $2.8 million. (Def. SOF ¶ 32.) Webber previously worked as Foreman II and Foreman III, where he supervised the entire mechanical department in Harrisburg. (Id. ¶ 34.) Webber's experience in these positions provided him with nearly twelve years of experience in mechanical operations and over twelve years of combined supervisory and management experience. (Id. ¶¶ 32, 34.) Additionally, defendant asserts that Webber previously served as District Manager on a temporary basis, where he managed various station functions and supervised various station personnel. (Id. ¶ 33.)

Webber's application also reflects experience with the CFR. (Id. ¶ 31; Decl. of Linda Davenport ("Davenport Decl."), Def. Mot. Ex. D, ¶ 6; Webber's District Manager Application

9.) Webber's attached performance review, written in 2008 by Richard Esposito, his supervisor at the time, reflected mostly ratings of "Strong" and "Exceptional" in a variety of evaluation categories. (Webber's District Manager Application 5-10.) Esposito noted Webber's strong management and leadership skills and described him as a "dedicated employee who is an asset to Amtrak." (Id. at 10.)

### E.     The Interview Process and Hiring of a New District Manager

Kerins selected four candidates to interview for the District Manager position, including Linda Garrity and Bradley Webber.[3] (Def. SOF ¶¶ 24, 30.) Plaintiff was not selected for an interview. (Id. ¶ 20.)

In selecting Garrity for an interview, Kerins did not rely exclusively on Garrity's application. (Id. ¶¶ 27-28; Kerins Dep. 51-54.) Kerins was personally familiar with Garrity and granted Garrity an interview after discussing Garrity's qualifications with Davenport, who also knew Garrity personally. (Def. SOF ¶¶ 27-29.)

Three individuals conducted the interviews: Davenport, Kerins, and Tsikalas. (Id. ¶ 21 n.4.) After completing the interviews and consulting with Kerins and Tsikalas, Davenport chose Webber for the District Manager position. (Id.; Davenport Decl. ¶ 6.) Webber accepted the promotion to District Manager in June 2009. (Def. SOF ¶ 32.)

### III.    LEGAL STANDARD

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676

---

[3] The parties do not identify the other two candidates.

F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant

summary judgment if "the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex

Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the

governing law" and genuine when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no 'genuine [dispute] for trial.'" Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

**IV.   DISCUSSION: RACE, COLOR, AND NATIONAL ORIGIN DISCRIMINATION BASED ON FAILURE TO PROMOTE PLAINTIFF TO DISTRICT MANAGER UNDER TITLE VII AND THE PHRA**[4]

The Complaint contains two counts. Both counts are based on defendant's selection of

Bradley Webber instead of plaintiff as District Manager. Plaintiff alleges that this conduct

constituted race, color, and national origin discrimination in violation of Title VII, (Count I,

Compl. ¶¶ 30-35), and race, color, and national origin discrimination in violation of the PHRA,

(Count II, id. ¶¶ 36-41).

**A.      McDonnell Douglas Burden-Shifting Analysis**

Title VII prohibits employment discrimination on the basis of "race, color, religion, sex,

or national origin." 42 U.S.C. § 2000e-2(a)(1); see also Huston v. Proctor & Gamble Paper

Prods., 568 F.3d 100, 104 (3d Cir. 1999). To establish employment discrimination, a plaintiff

---

[4] Courts in the Third Circuit construe Title VII claims consistently with PHRA claims, and thus the analysis of plaintiff's Title VII claim in Count I applies with equal force to his PHRA claim. See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 n.5 (3d Cir. 2006).

must show that the employer bore a racially discriminatory animus against the employee and that this animus manifested itself in some challenged action, whether it be dismissal, failure to promote, or failure to hire. Lewis v. Univ. of Pittsburgh, 725 F.2d 910, 914 (3d Cir. 1983).

In the absence of direct evidence of discrimination, a plaintiff can show discrimination using the three-prong burden-shifting analysis originally set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997). Plaintiff bears the burden of establishing a prima facie case of discrimination. See McDonnell Douglas, 411 U.S. at 802. If plaintiff establishes a prima facie case, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. See id. This burden is one of production, not persuasion. Smith v. City of Allentown, 589 F.3d 684, 690 (3d Cir. 2009). If defendant offers a legitimate, nondiscriminatory reason, in order to survive summary judgment, plaintiff must submit evidence "to demonstrate that the employer's proffered rationale was a pretext for [] discrimination." Id. Notwithstanding this burden-shifting framework, plaintiff always bears the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 799 n.10 (3d Cir. 2003).

### B.      Prima Facie Case Under Title VII and PHRA

A plaintiff makes out a prima facie case by showing: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action was made "under circumstances that give rise to an inference of unlawful discrimination." Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995) (citing Tx. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). A plaintiff's burden of establishing a prima facie case is not "onerous." Burdine, 450 U.S. at 253. However, a plaintiff

must present evidence that "establish[es] some causal nexus between his membership in a protected class" and the adverse employment decision. Sarullo, 352 F.3d at 798 (emphasis added).

Defendant concedes that the first and third elements are met but asserts that the second and fourth are not. (See Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def. Mem.") 3.) The Court will address the second and fourth elements in turn.

### 1.   Second Element of Plaintiff's Prima Facie Case

As to the second element, defendant contends that no reasonable juror could find that plaintiff was qualified for the District Manager position because he had no experience managing mechanical operations and had no experience with the CFR. (See id. at 3-4.) The Court rejects this argument.

To show that he was qualified, plaintiff "must point to evidence from which a factfinder could reasonably infer that the plaintiff satisfied the [criteria] identified by the employer or that the employer did not actually rely upon the stated [criteria]." Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 647 (3d Cir. 1998) (citing Fuentes v. Perskie, 32 F.3d 759, 767 (3d Cir. 1994)). Thus, the issue at this stage of the case is whether a reasonable juror could find that plaintiff met the mandatory qualifications set forth in the District Manager job posting.

As reflected by his application, plaintiff had a high school diploma and held positions in his thirty-year career at Amtrak in which he could have acquired the skills that were strictly required for the District Manager position: (1) demonstrated supervisory/leadership experience, (2) demonstrated knowledge in station operations, and (3) the ability to effectively communicate with customers and organizations. (See Pl.'s District Manager Application.) Furthermore, neither knowledge of mechanical operations nor experience with the CFR was a required qualification

for the District Manager position. (See Def. SOF ¶ 11; Kerins Dep. 23-25; District Manager Job Posting.) Those criteria were merely "highly desirable." (District Manager Job Posting.)

Therefore, there is sufficient evidence from which a reasonable juror could conclude that plaintiff was qualified for the District Manager position. There is thus a genuine dispute of material fact as to whether the second element of plaintiff's prima facie case is satisfied.

### 2. Fourth Element of Plaintiff's Prima Facie Case

As to the fourth element, plaintiff contends that there is sufficient circumstantial evidence to create an inference of racial discrimination because (1) he was more qualified than Webber for the District Manager position and (2) at the very least, he was similarly qualified to Webber because he met all of the mandatory job requirements and all but one of the preferred requirements. (Pl. Opp'n 4.) For the reasons below, the Court rejects these arguments.

To establish the fourth element of his prima facie case, plaintiff must show that the adverse employment action was made "under circumstances that give rise to an inference of unlawful discrimination." Waldron, 56 F.3d at 494. Plaintiff may satisfy the fourth element by showing that his employer treated a similarly situated employee who is not within his protected class differently than him. Cange v. Phila. Parking Auth., No. 08-3480, 2009 WL 3540784, at *6 (E.D. Pa. Oct. 30, 2009).

Both of plaintiff's arguments fail for the same reason: plaintiff has not presented any evidence to show that the adverse employment decision was made "under circumstances that give rise to an inference of unlawful discrimination." Waldron, 56 F.3d at 494. Plaintiff has not identified a single discriminatory statement by an Amtrak employee, nor has he presented any other evidence that evinces a motivation on the part of defendant not to promote plaintiff to District Manager because of his race or national origin. Plaintiff has not presented any evidence

to show that defendant has discriminated against him in the past or has treated non-Hispanic workers more favorably. Cf. Verma v. Univ. of Pa., No. 11-611, 2012 WL 1835727, at *8 (E.D. Pa. May 18, 2012) (finding plaintiff satisfied fourth element of her prima facie case by pointing to specific instances in which her employer accommodated coworkers outside of her protected class but rejected plaintiff's similar requests). In short, there is no evidence of a "causal nexus between [plaintiff's] membership in a protected class" and defendant's decision not to promote him to District Manager. Sarullo, 352 F.3d at 798.

Plaintiff has failed to establish the fourth element of his prima facie case for still another reason: he cannot show that he was similarly qualified to Webber. As reflected by the comprehensive application Webber submitted, Webber was very well qualified for the District Manager position. (See Webber's District Manager Application.) In addition to over twelve years of managerial and supervisory experience, Webber possessed two of the "highly desirable" qualifications set forth in the job posting, knowledge of mechanical operations and the CFR. (Id.; Def. SOF ¶¶ 31-34.) Webber's experience as acting District Manager, in addition to the performance review and skill report he attached to his application, further solidified his status as a highly qualified candidate. (See Webber's District Manager Application.)

Moreover, while a reasonable jury could find that plaintiff met the mandatory qualifications set forth in the job posting, plaintiff has not presented any evidence to establish that he possessed any of the three "highly desirable" qualifications. Plaintiff's contrary assertions in his brief in opposition to the motion are conclusory and not supported by any evidence in the record. (See Pl. Opp'n 4.) Furthermore, plaintiff's application, which was the only information that Kerins had regarding his skills and qualifications, did not show that plaintiff possessed such qualifications. (See Pl. Dep. 96; Pl.'s District Manager Application.) Unlike plaintiff, Webber

submitted a much more comprehensive application that represented in detail why he was very

well qualified for the position. (Compare Pl.'s District Manager Application with Webber's

District Manager Application.) It is readily apparent from plaintiff's application that he was not

similarly situated to Webber.

The Court thus concludes that plaintiff has not made out a prima facie case of

discrimination because there is no genuine dispute of material fact as to the fourth element of a

prima facie case. There is no evidence that the adverse employment action was made "under

circumstances that give rise to an inference of unlawful discrimination." Waldron, 56 F.3d at

494.

### C.       Remaining Steps of the McDonnell Douglas Framework

Even assuming arguendo that plaintiff had established a prima facie case, plaintiff has

nevertheless failed to demonstrate that there is a genuine dispute of material fact as to whether

defendant's proffered legitimate, nondiscriminatory reasons for not promoting plaintiff were

pretext for discrimination based on race, color, or national origin.

Defendant has met its burden of production at the second step of the McDonnell Douglas

framework by offering two legitimate, nondiscriminatory explanations for its adverse

employment action. See McDonnell Douglas, 411 U.S. at 802. First, defendant asserts that

plaintiff was not selected for an interview because he failed to fill out the job application

properly and because he lacked experience in mechanical operations and the CFR, two of the

"highly desirable" job qualifications. (Def. Mem. 8; Def. Reply Mem. 4 n.4.) Second, defendant

states that it selected Webber for the promotion because he was the most qualified candidate, as

evidenced by his superior qualifications, hands-on experience in mechanical operations, and

previous service as acting District Manager. (Def. Mem. 8.) Thus, defendant has met its

"relatively light" burden to "introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (citing Fuentes, 32 F.3d at 759).

At the third step of the McDonnell Douglas framework, a plaintiff must show that the employer's proffered legitimate, nondiscriminatory reason for the adverse employment action is pretext for discrimination. Burdine, 450 U.S. at 252. To establish pretext, a plaintiff must present "some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). It is not enough that the employer's decision was "wrong or mistaken"; rather, a plaintiff must demonstrate that "the employer's articulated reason was . . . so plainly wrong that it cannot have been the employer's real reason." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 413 (3d Cir. 1999) (internal quotations omitted). Thus, the inquiry is not "whether the employer is wise, shrewd, prudent or competent"; rather, the inquiry is "whether discriminatory animus motivated the employer." Fuentes, 32 F.3d at 765. Because "the prima facie case and pretext inquiries often overlap," the Court may consider the same evidence at both stages of the McDonnell Douglas analysis. Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 370 (3d Cir. 2008).

Plaintiff advances numerous arguments for why defendant's proffered reasons were pretextual. First, plaintiff avers that defendant has failed to articulate any reason for not selecting plaintiff for an interview. (Pl. Opp'n 5.) The Court rejects this argument because defendant has, in fact, advanced such reasons. As discussed above, defendant asserts that plaintiff was not

selected for an interview because, based on the application he submitted, Kerins did not believe

him to be the most qualified candidate. (Def. SOF ¶ 18; Kerins Dep. 17.)

Second, plaintiff avers that the District Manager's primary responsibility is customer

service and that "Webber had no customer service experience according to his application." (Pl.

Opp'n 6.) This argument is likewise insufficient to establish pretext because Webber's complete

application does, in fact, contain descriptions of extensive customer-service experience and, even

if Webber did lack customer-service experience, the District Manager job posting does not

clearly identify the primary job responsibility as customer service. (See Webber's District

Manager Application; District Manager Job Posting.) Furthermore, plaintiff's belief that

customer-service experience was the most important criterion is immaterial because an

"employee's judgment as to the importance of [a] stated criterion" in a job posting is not relevant

in this context. See Simpson, 142 F.3d at 647. The emphasis is instead on the particular

qualifications that the employer deems essential to the position. See Ezold v. Wolf, Block,

Schorr & Solis-Cohen, 983 F.2d 509, 528 (3d Cir. 1992).

Third, plaintiff contends that pretext can be inferred from defendant's allegedly erroneous

decision to deny plaintiff an interview while at the same time granting an interview to Garrity,

who plaintiff asserts was not qualified. (Pl. Opp'n 9.) The Court rejects this argument as well.

Even if defendant's decision not to interview plaintiff was based on an erroneous assessment of

his qualifications and even if Garrity was not qualified, "[t]he Court does not sit as a super

employment court to decide the merits of employment decisions." Allen v. PetSmart, Inc., 512

F. Supp. 2d 288, 296 (E.D. Pa. 2007). Furthermore, a "wrong or mistaken" assessment by

defendant is not sufficient to establish pretext. See Jones, 198 F.3d at 413. Moreover, plaintiff

cannot establish pretext by simply relying on the fact that Garrity was outside of his protected

class because even if there is sufficient evidence for a reasonable jury to infer preferential

treatment, a plaintiff must still demonstrate that this favorable treatment is "somehow connected

to the racial status of the [plaintiff], [otherwise] it cannot support a violation of Title VII or the

PHRA." Lawton v. Sunoco, Inc., No. 01-2784, 2002 WL 1585582, at *7 (E.D. Pa. July 17,

2002), aff'd, 65 F. App'x 874 (3d Cir. 2003); see also Fuentes, 32 F.3d at 765 (the inquiry is

"whether discriminatory animus motivated the employer"). This, plaintiff has failed to do.

Finally, plaintiff avers that defendant, knowing that Webber was not qualified for the

position, engaged in a ploy to "disqualify plaintiff" by appointing Webber as acting District

Manager, appointing Garrity as temporary Station Manager, and keeping then-District Manager

Esposito in that position as part of the transition process. (Pl. Opp'n 6, 8.) As further evidence of

this alleged scheme, plaintiff argues that the reference to mechanical experience in the job

posting was specifically designed to "disqualify plaintiff" because less than a year after the

position was filled, responsibility for mechanical operations was removed from the District

Manager. (Id. at 8-9; Def. SOF ¶ 9 n.4.)

The Court rejects this argument on the ground that, as stated above, plaintiff has offered

no evidence to support an inference that defendant did not promote plaintiff because of his race

or national origin. Moreover, plaintiff's assertion that defendant included mechanical experience

in the job posting for the specific purpose of disqualifying plaintiff is not supported by any

evidence in the record. This assertion and plaintiff's more general assertions of racial

discrimination are based on conclusory and unsupported beliefs, which are insufficient to create

a genuine dispute of material fact for trial. See Habib v. Urban Outfitters, Inc., No. 03-CV-1561,

2004 WL 765119, at *6 (E.D. Pa. Apr. 1, 2004) ("A plaintiff's own assertion of racial animus

does not give rise to an inference of unlawful discrimination."); King v. Sch. Dist. of Phila., No.

00-CV-2503, 2001 WL 856948, at \*4 (E.D. Pa. July 26, 2001) ("[C]onclusory and unsupported

beliefs are insufficient to create a genuine [dispute] of material fact as to [a] Defendant['s]

motivation or [to] support an inference of discrimination based on race.").

Plaintiff has simply failed to present any evidence from which a reasonable factfinder

could infer that the adverse employment action was motivated by discriminatory animus. The

Court thus concludes that even assuming arguendo that plaintiff made out a prima facie case,

defendant would be entitled to summary judgment at the third step of the McDonnell Douglas

framework.

V.    CONCLUSION

For the reasons set forth above, the Court grants Defendant's Motion for Summary

Judgment.

An appropriate Order follows.